Alexander D. Terepka (SBN 288243)
Ryan D. Watstein (*pro hac vice*)
Andrew M. Swindle (*pro hac vice*)
rwatstein@kcozlaw.com
aterepka@kcozlaw.com
aswindle@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

Kristapor Vartanian (SBN 275378)
kvartanian@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
333 S. Grand Ave, Suite 2225
Los Angeles, CA 90071
Telephone: 213-493-3980
Facsimile: (404) 400-7333

*Attorneys for Defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA JOHNSON and CHARLOTTE GUSS, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., a Delaware corporation; SPECTRUM MANAGEMENT HOLDING COMPANY, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 4:21-cv-06135-HSG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed Concurrently with Declaration of Christine Flores, Declaration of Puru Patnekar, Declaration of Ahmar Qureshi, and Proposed Order]*<br><br>Date:    March 31, 2022<br>Time:    2:00 p.m.<br>Ctrm:    2 (4th Floor)<br>          1301 Clay Street<br>          Oakland, CA 94612 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 31, 2022, at 2:00 p.m., in Courtroom 2 (4th Floor) of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC will and hereby do move the Court for an Order dismissing Plaintiff Loretta Johnson and Charlotte Guss's First Amended Complaint—including the Telephone Consumer Protection Act ("TCPA") and California Invasion of Privacy Act ("CIPA") claims therein—for lack of personal jurisdiction pursuant to Federal Rule Civil Procedure 12(b)(2).

Plaintiffs fail to state a *prima facie* claim of either general or specific personal jurisdiction over Defendants.  First, Defendants are not subject to general jurisdiction in this forum because they are not incorporated in California, do not maintain their principal place of business in California, and do not maintain such systematic and continuous contacts to be considered "at home" in California.  Second, as to specific jurisdiction, Plaintiffs do not adequately allege that their claims arise out of any conduct that Defendants directed at California.  These pleading deficiencies are dispositive, and the Court should dismiss Plaintiffs' claims on this basis alone.  And Defendants' jurisdictional evidence likewise confirms that they did not direct any conduct towards California from which Plaintiffs' respective claims arise.  Thus, even assuming Plaintiffs' allegations were sufficient to state a *prima facie* claim of personal jurisdiction (they are not), Defendants' jurisdictional evidence confirms this Court lacks specific jurisdiction.    Accordingly, the Court should dismiss Plaintiffs' claims.

DATED:  November 19, 2021                KABAT CHAPMAN & OZMER LLP

/s/ *Kristapor Vartanian*

By: _____
Kristapor Vartanian

*Attorney for Defendants Charter Communications, Inc. and Spectrum Management Holding Company, LLC*

## **TABLE OF CONTENTS**

STATEMENT OF ISSUE TO BE DECIDED ....................................................................... 1

I.    INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND.................. 4

    A.    Procedural History and Plaintiffs' Allegations. ...................................... 4

    B.    Defendants' Business Operations and Limited California Footprint. ..................... 5

    C.    Defendants' Investigation into Plaintiffs' Allegations......................... 6

III.    ARGUMENT: DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA. ........................................................... 8

    A.    Legal Standard............................................................................... 8

    B.    Defendants Are Not Subject to General Jurisdiction Because They Lack Corporate Operations in California and are Not Otherwise "at Home" in California. ................................ 8

    C.    This Court Lacks Specific Jurisdiction over Defendants Because Defendants Have No Contacts with California Specific to Plaintiffs' TCPA and CIPA Claims. ................................. 9

        1.    Plaintiffs Fail to Allege a *Prima Facie* Case of Specific Jurisdiction. ........................ 10

        2.    Defendants' Evidence Confirms that Plaintiffs Cannot Establish Specific Personal Jurisdiction Either Directly or Vicariously. ................................. 12

            a.    Direct Liability. .......................................................... 12

            b.    Apparent Authority......................................................... 13

            c.    Actual Authority. ......................................................... 14

            d.    Ratification. ............................................................ 16

    D.    The Northern District of Illinois Dismissed a Similar TCPA Claim for Lack of Personal Jurisdiction, Despite the Plaintiff's Greater Factual Support and the More Limited Showing Required in the Seventh Circuit. ................................. 18

IV.    CONCLUSION ................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ............................................................... 10, 15, 17

*Am. W. Airlines, Inc. v. GPA Grp., Ltd.*,
877 F.2d 793 (9th Cir. 1989)................................................................................................ 13

*Amba Marketing Systems, Inc. v. Jobar International, Inc.*,
551 F.2d 784 (9th Cir. 1977).................................................................................................. 8

*BNSF Ry. Co. v. Tyrell*,
137 S. Ct. 1549 (2017) ........................................................................................................... 9

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011)................................................................................................ 8

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) .............................................................................................. 8, 9, 10, 15

*Declements v. Americana Holdings LLC*,
2020 WL 4220075 (D. Ariz. July 23, 2020) ....................................................................... 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........................................................................................................... 8, 9

*Harris Rusky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003).......................................................................................... 2, 9

*Johnson v. Blue Nile, Inc.*,
2021 WL 131271 (N.D. Cal. Apr. 8, 2021) ............................................................ 11, 14, 16

*Jones v. Royal Admisn. Serv.*,
887 F.3d 443 (9th Cir. 2018)................................................................................................ 16

*Kimmel v. Goland*,
51 Cal. 3d 202 (1990)...................................................................................................*passim*

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)............................................................................................................ 14

*Kristensen v. Credit Payment Serv. Inc.*,
879 F.3d 1010 (9th Cir. 2018).............................................................................................. 17

*Maghen v. Quicken Loans Inc.*,
680 Fed. App'x 554 (9th Cir. Feb. 23, 2017)....................................................................... 14

*Mattel, Inc. v. Greiner & Hausser GmbH*,
  354 F.3d 857 (9th Cir. 2003) ................................................................................................ 8

*Moore v. Charter Commc'n., Inc.*,
  523 F. Supp. 3d 1046 (N.D. Ill. 2020) ......................................................................... 4, 18, 19

*Naiman v. TranzVia LLC*,
  2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ........................................................... *passim*

*Pado, Inc. v. SG Trademark Holding Co.*,
  2020 WL 1445720 (C.D. Cal. 2020) .................................................................................. 11

*Rogers v. Postmates Inc.*,
  2020 WL 3869191 (N.D. Cal. July 9, 2020) ................................................................. 13, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .............................................................................................. 10

*Stewart v. Screen Gems–EMI Music, Inc.*,
  81 F.Supp.3d 938 (N.D. Cal. 2015) ..................................................................................... 9

*Tuso v. Nat'l Health Agents*,
  2021 WL 2534220 (E.D. Cal. June 21, 2021) ..................................................................... 17

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ...................................................................................................... 10

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) ..................................................................................... *passim*

*Winters v. Grand Caribbean Cruises, Inc.*,
  2021 WL 511217 (D. Ariz. Feb. 11, 2021) ................................................................ *passim*

*Winters v. Quicken Loans, Inc.*,
  2021 WL 5040323 (D. Ariz. Oct. 29, 2021) ................................................................. 13, 15

**Statutes**

Cal. Civ. Proc. Code § 410.10 ................................................................................................ 8

**Rules**

Fed. R. Civ. P 12 ....................................................................................................... 1, 4

**STATEMENT OF ISSUE TO BE DECIDED**

1.      Whether Plaintiff Johnson's and Plaintiff Guss's claims must be dismissed for lack of personal jurisdiction where Plaintiffs failed to adequately allege any theory of direct or vicarious liability by which Defendants are subject to personal jurisdiction in California and Defendants' evidence confirms the same.

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.      INTRODUCTION

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendants Charter Communications, Inc. ("Charter") and Spectrum Management Holding Company, LLC ("Spectrum Management") move to dismiss the FAC in its entirety for lack of personal jurisdiction.  As to Plaintiff Guss, she vaguely alleges Defendants or an unidentified third party made an unidentified number of pre-recorded marketing calls to her in violation of the TPCA and recorded the same without her consent in violation of CIPA.  And Plaintiff Johnson vaguely alleges she called Defendants or an unidentified individual working on their behalf, she spoke with that individual regarding purchasing Defendants' Spectrum-branded services, that individual called her back to confirm her order, and these calls were recorded without her consent in violation of CIPA.

Though Plaintiff Johnson's claims should be compelled to arbitration,[1] both Plaintiffs' vague allegations fail to state a *prima facie* claim of either general or specific personal jurisdiction over Defendants because Plaintiffs have not even alleged that Defendants communicated with them.  And in any event, Defendants' attached jurisdictional evidence confirms that they are not subject to personal jurisdiction in this forum regardless of the deficient allegations.

With respect to general jurisdiction, Charter and Spectrum Management: (1) are not incorporated in California; (2) do not maintain a principal place of business in California; and (3) are not "at home" in California.  Spectrum Management is not even registered to do business in California.  And, although Charter is registered to do business in California, it has no business operations, real

---

[1] As explained in Defendants' concurrently-filed motion to compel arbitration, the Court should order Johnson to submit her claims to arbitration.  Defendants file this motion to dismiss for lack of personal jurisdiction in the alternative as to Johnson so as not to waive their jurisdictional arguments.

estate, or employees in California. Moreover, even if Charter and Spectrum Management's subsidiaries and affiliates' (the "Spectrum Entities") operations in California could be considered for personal jurisdiction (they cannot),[2] such operations are a tiny fraction of the Spectrum Entities' nationwide operations and are therefore insufficient to render either Defendant "at home" in California. The Court thus lacks general jurisdiction over Defendants.

As to specific jurisdiction, Guss fails to allege that her TCPA and CIPA claims arise out of any conduct that Charter, Spectrum Management—or any Spectrum Entity for that matter—directed at California. The sum total of her allegations is that an unidentified individual, calling from an unidentified number, called her an unidentified number of times, offering Spectrum-branded services. In making these allegations, Guss effectively concedes she cannot establish that her claims arise from *Defendants'* forum-related activities. Defendants cannot be hailed into a foreign jurisdiction simply because an unidentified party mentioned Spectrum brand cable and internet services on a call. If more was not required, Defendants would be subject to personal jurisdiction in *every* forum *any* time *any* individual purported to be offering Spectrum services on *any* call, even if that individual had no association with Defendants. That is not the law. And Guss otherwise fails to adequately allege specific jurisdiction over Defendants based on any purported agency relationship between Defendants and the unidentified calling party. These pleading deficiencies are dispositive, and the Court should dismiss Guss's claims on this basis alone.

Nevertheless, the jurisdictional evidence filed with this motion confirms this Court lacks specific jurisdiction over Defendants as to Guss's claims because neither Defendants, nor the Spectrum Entities, nor any Spectrum outbound telemarketing vendors made the alleged calls. Thus, Guss's purported injury did not arise from intentional California-directed activities by Defendants.

Nor could the acts of this unidentified caller be imputed to Defendants for purposes of specific jurisdiction under an agency theory or otherwise. Defendants did not give anyone actual authority to place the alleged calls. To the contrary, the only parties with authority to make outbound

---

[2] "It is well established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rusky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003).

telemarketing calls for Spectrum did not make the calls identified by Guss.  Nor would they, as those vendors only make calls in full compliance with applicable law, including the TCPA and CIPA. Defendants also made no statement to Guss, prohibiting any personal jurisdiction via apparent authority.  And Guss admits that she did not place an order for Spectrum services, so Defendants did not accept or derive any benefit from the purported calls, prohibiting any personal jurisdiction theory based on ratification.  Thus, there is simply no set of facts (alleged or otherwise) that Guss can use to assert personal jurisdiction over Defendants.

For these same reasons, there is no specific personal jurisdiction as to Johnson's CIPA claim. Defendants' jurisdictional evidence confirms that Johnson placed a call to—and received a call back from—non-party UP Digital Marketing, LLC ("UP Digital").  Accordingly, there is no specific jurisdiction over Defendants because they did not have any contacts with California from which Johnson's CIPA claims arise.  Further, UP Digital's contacts with Johnson and California cannot be attributed to Defendants through any theory of vicarious liability for personal jurisdiction purposes, as CIPA does not allow for vicarious liability.  And even if traditional agency theories applied to Johnson's CIPA claims (they do not), UP Digital did not have actual authority to record or monitor its calls with Johnson in violation of CIPA.  In fact, UP Digital was required to (and did) comply with all applicable laws in the performance of its duties for Defendants and the Spectrum Entities, including compliance with CIPA.  Defendants' jurisdictional evidence further confirms that Johnson did not have any contact or communication with Defendants prior to speaking with UP Digital on the alleged calls, prohibiting any theory of vicarious liability via apparent authority.  And UP Digital did not complete a sale of Spectrum-branded cable and internet services to Johnson, precluding any assertion of personal jurisdiction through ratification.

Put simply, Plaintiffs' TCPA and CIPA claims do not arise from any conduct Defendants expressly aimed at California, as required to prove specific jurisdiction.  Instead, Guss's claims arise from the purported activities of an *unrelated* and *unidentified* thirty party, with whom Defendants have no relationship and whose conduct cannot be imputed to them.  And Johnson's arises from the conduct of an independent third party, UP Digital, which also cannot be imputed to Defendants.  As

Defendants are not otherwise "at home" in California, there is no general jurisdiction over them in this matter either.

Although Ninth Circuit law is dispositive on these issues, it bears noting that in *Moore v. Charter Commc'n., Inc*., the Northern District of Illinois dismissed a plaintiff's TCPA claims for lack of personal jurisdiction without permitting jurisdictional discovery, despite plaintiff's greater factual support for his assertion of personal jurisdiction and Seventh Circuit authority that allowed for a more limited showing on this issue. *See* 523 F. Supp. 3d 1046 (N.D. Ill. 2020).

For these reasons, and the others discussed herein, Defendants respectfully request that this Court dismiss Plaintiffs' TCPA and CIPA claims pursuant to Rule 12(b)(2).

## II.   <u>PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND</u>

### A.   Procedural History and Plaintiffs' Allegations.

Plaintiff Loretta Johnson filed this putative class action against Defendants, asserting one count under CIPA, which Defendants removed to this Court.  Notice of Removal, ECF No. 1; Complaint ¶¶ 56-62, ECF No. 1-1.  Thereafter, Plaintiff Johnson and Charlotte Guss filed a First Amended Complaint ("FAC").  FAC, ECF No. 11.  In the FAC, Johnson reiterated her CIPA claim and added Guss as a plaintiff, with Guss alleging that she received marketing calls from Defendants in violation of the TCPA and CIPA.  *Id*. ¶¶ 125-141.

In the FAC, Johnson claims that she called Defendants or an unidentified agent of Defendants to sign-up for Spectrum-branded cable and internet services.  *Id*. ¶ 65.  She alleges that, on or about July 23, 2020, she spoke with a live representative regarding her eligibility for Spectrum cable and internet services, during which she provided her home address, email address, and date of birth.  *Id*. ¶¶ 65-67.  After her initial call ended, the live representative called her back that same day to follow up on her order, and these calls were purportedly recorded without any disclosure or her consent in violation of CIPA.  *Id*. ¶¶ 65-71.

Plaintiff Guss, on the other hand, alleges that her residential telephone number (the "Subject Number") has been on the National Do-Not-Call Registry ("NDNCR") since 2005, yet, starting "in 2020" she received "numerous" telemarketing calls "by or on behalf of Defendants."  *Id*. ¶¶ 72-73.  Guss alleges that these calls used pre-recorded voices ("PRV") advertising Spectrum cable and

internet services without her consent.  *Id*. ¶¶ 74-75.  Guss further alleges that on March 26, 2020, she connected with an unidentified individual on one of these marketing calls and claims that this unidentified individual also offered her Spectrum services.  *Id*. ¶ 76.  Guss provided that unidentified individual her personal information on the call, she claims, but did not ultimately sign up for Spectrum services.  *Id*. ¶¶ 76-77.

Plaintiffs vaguely allege that "Defendants and/or its agents" called them.  *Id*. ¶¶ 47-48, 70, 73, 79.  Plaintiffs also vaguely claim that third party retailers sell Spectrum services on Defendants' behalf.  *Id*. ¶¶ 50-64. But neither alleges that any of these third party retailers called them.  *Compare* FAC ¶¶ 50-64 (alleging Defendants have retail partner program to market Spectrum cable and internet services) *with id*. ¶ 65-84 (alleging that she received calls "by or on behalf of" Defendants and "Defendants and/or its agents intentionally recorded the calls").

### B.  Defendants' Business Operations and Limited California Footprint.

Charter Communications, Inc. is a publicly traded company that performs certain business functions for the Spectrum Entities (including Spectrum Management Holding Company, LLC), which, in turn provide cable, internet, and telephone services in forty-one states.  Declaration of Christine Flores ("Flores Decl.") ¶ 2.  Charter Communications, Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut.  *Id*. ¶ 5.  Although Charter Communications, Inc. is registered to do business in California, it has no business operations or corporate offices in California.  *Id*.  ¶ 7.  Spectrum Management Holding Company, LLC is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.  *Id*. ¶ 6.  Spectrum Management Holding Company, LLC is not registered to do business in California and likewise has no business operations or corporate offices in California.  *Id*. ¶ 7.

Rather, the Spectrum Entities conduct limited business in California.  *Id*. ¶ 8.  As of October 21, 2021, less than ten percent (10%) of the Spectrum Entities' workforce works in California.  *Id*. ¶ 9.  None of the Spectrum Entities' employees in California are executive-level employees.  *Id*. ¶ 10.

Charter Communications, Inc. and Spectrum Management Holding Company, LLC, in contrast, have no employees in California.  *Id*. ¶ 11.  The Spectrum Entities own or lease certain hubs, towers, data centers, storage spaces, retail space, and office space in California, but, as of October

31, 2021, of the square feet of space that the Spectrum Entities own or lease nationwide, less than ten percent (10%) is located in California.  *Id.* ¶ 12.  Charter Communications, Inc. and Spectrum Management Holding Company, LLC, in contrast, do not own or lease any real property in California.  *Id.* ¶ 13.

Likewise, as of September 28, 2021, a small percentage of the Spectrum Entities' total subscribers are located in California, relative to their subscribers nationwide.  *Id.* ¶ 14.  Similarly, in the third fiscal quarter of 2021, the Spectrum Entities derived only a small percentage of their revenue from operations in California, relative to their operations nationwide.  *Id.* ¶ 15.

### C.  Defendants' Investigation into Plaintiffs' Allegations.

After learning about the alleged calls through the FAC, Defendants confirmed that neither they, nor any of the Spectrum Entities, nor the outbound telemarketing vendors with whom the Spectrum Entities contract, made the alleged calls on which Guss premises her TCPA and CIPA claims.  Declaration of Puru Patnekar ("Patnekar Decl.") ¶ 7; Flores Decl. ¶ 16-17.  Although the Spectrum Entities perform limited outbound telemarketing through one internal group—Telesales— neither that group nor its vendors made calls to the Subject Number.  Patnekar Decl. ¶¶ 5-7.  Nor would they, as Charter, Spectrum Management, the Spectrum Entities, and the select vendors that perform outbound telemarketing for the Spectrum Entities only place marketing calls in compliance with the TCPA and CIPA.  *Id.* ¶ 5.  Neither Charter Communications, Inc. nor Spectrum Management Holding Company, LLC know what person or entity placed the purported calls to Charlotte Guss's telephone number, nor whether there were even any calls made to that number.  Flores Decl., ¶¶ 16-17.  If the calls were in fact placed, they were not made with Defendants' knowledge or permission.  Patnekar Decl., ¶ 7; Flores Decl., ¶ 17.

As to Johnson, after learning about the alleged calls through the original Complaint, Defendants confirmed that these calls were received and placed not by Defendants or any affiliated entities, but by an independent retailer of cable services, which sells several brands' services—UP Digital.  Declaration of Ahmar Qureshi ("Qureshi Decl.") ¶¶ 10-13.  UP Digital is a Texas limited liability company with its principal place of business in Grapevine, Texas.  *Id.* ¶ 4.  Pursuant to the reseller agreement between UP Digital and a non-party Spectrum Entity, UP Digital is a non-

exclusive independent contractor who independently markets Spectrum-branded cable and internet services, along with other competing companies' cable and internet services. *Id*. ¶¶ 5-6.

As an independent reseller, UP Digital was required to comply with all applicable laws, ordinances, when and if it chose to sell Spectrum services. *Id*. ¶ 6, Ex. A.  At the time in question, UP Digital was permitted to receive inbound calls from consumers about Defendants' Spectrum-branded cable and internet services, in response to non-branded internet ads about cable services posted by UP Digital. *Id*., Ex. A.  According to UP Digital's records, it received a call from Johnson on July 23, 2020, inquiring about Spectrum-branded cable and internet services, presumably in response to one of UP Digital's ads. *Id*. ¶ 10.  When potential customers call UP Digital's customer service line—1-855-243-0017—a recording immediately plays informing the potential customer that calls may be recorded for quality assurance purposes. *Id*.  Only after this disclosure plays can the potential customer be transferred to a live representative. *Id*.

On the July 23, 2020 call, Johnson dialed UP Digital's customer service line, and, thereafter, spoke with an UP Digital representative regarding her eligibility for Spectrum-branded cable and internet services. *Id*. ¶ 11.  Ms. Johnson could not have spoken with that representative without first hearing the disclosure that the call may be monitored or recorded. *Id*.  Thus, Johnson's allegation that "Defendants and/or its agents made a recording of these calls and failed to disclose to Plaintiff Johnson that the calls were being recorded or monitored" is false, several times over.  FAC ¶ 70.  That same day, UP Digital placed a call back to Johnson to confirm the status of her order. Qureshi Decl., ¶ 12.  On that call, the live representative immediately identified himself and confirmed that Johnson's order for Spectrum cable and internet services would not be moving forward, since Johnson had already ordered Spectrum services through other means. *Id*. ¶ 12-13.  Although UP Digital spoke with Johnson regarding eligibility for Spectrum cable and internet services on these calls, her order ultimately could not be processed. *Id*. ¶ 13.

1    **III.    ARGUMENT: DEFENDANTS ARE NOT SUBJECT TO PERSONAL**

2    **JURISDICTION IN CALIFORNIA.**

3    **A.    Legal Standard.**

4    The Ninth Circuit has established a two-prong test for personal jurisdiction: (1) "jurisdiction

5    must comport with the state long-arm statute," and (2) jurisdiction must comport "with the

6    constitutional requirement of due process." *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857,

7    863 (9th Cir. 2003). As to the first prong, California's long arm statute provides that "a court of this

8    state may exercise jurisdiction on any basis not inconsistent with the Constitution of this State or of

9    the United States." Cal. Civ. Proc. Code § 410.10. Because California law allows the exercise of

10   jurisdiction to the same extent as due process under the United States Constitution, the only question

11   is whether the exercise of jurisdiction over the defendant is constitutional. *See Mattel*, 354 F.3d at

12   863.

13   Under a due process analysis, personal jurisdiction may be either "general" or "specific."

14   *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014); *Goodyear Dunlop Tires Operations, S.A. v.*

15   *Brown*, 564 U.S. 915, 919 (2011). Plaintiffs bear the burden of establishing a *prima facie* case that

16   the court may exercise personal jurisdiction over a defendant. *CollegeSource, Inc. v. AcademyOne,*

17   *Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). However, a plaintiff cannot simply rest on the bare

18   allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or

19   otherwise, supporting personal jurisdiction. *Amba Mktg. Sys., Inc. v. Jobar Int'l., Inc.*, 551 F.2d 784,

20   787 (9th Cir. 1977). Under Supreme Court and Ninth Circuit precedent, discussed below, the Court

21   should dismiss Plaintiffs' TCPA and CIPA claims for lack of personal jurisdiction.

22   **B.    Defendants Are Not Subject to General Jurisdiction Because They Lack**

23   **Corporate Operations in California and are Not Otherwise "at Home" in**

24   **California.**

25   Neither Charter nor Spectrum Management are subject to general jurisdiction in California.

26   General jurisdiction over a corporation requires a sufficiently substantial corporate presence, typically

27   found at the defendant's place of incorporation and its principal place of business. *Daimler*, 134 S.

28   Ct. at 760. For general jurisdiction to exist elsewhere, the court must find that the corporation's

activities in a state are more than "substantial, continuous, and systematic"—that they are so substantial that the corporation "is fairly regarded as at home" there. *Goodyear*, 564 U.S. at 924.

Charter and Spectrum Management are a Delaware corporation, and limited liability company, respectively, with their principal places of business in Stamford, Connecticut, Flores Decl., ¶¶ 5-6, meaning Plaintiffs must show they are "fairly regarded as at home" in California to show that general jurisdiction is proper. *Goodyear*, 564 U.S. at 924. Plaintiffs cannot satisfy this heavy burden because Spectrum Management is not registered to do business in California, and, although Charter is, Defendants have no employees, limited operations, and no corporate offices in California, as explained above. Flores Decl., ¶¶ 7-15. These facts, standing alone, require dismissal of Plaintiffs' TCPA and CIPA claims under a general jurisdiction analysis.[3] *See*, *e.g*., *Daimler*, 124 S. Ct. at 761; *Goodyear*, 564 U.S. at 924.

## C.    This Court Lacks Specific Jurisdiction over Defendants Because Defendants Have No Contacts with California Specific to Plaintiffs' TCPA and CIPA Claims.

Plaintiffs have failed to—and, based on the attached jurisdictional evidence, cannot—demonstrate that this Court has specific jurisdiction over Defendants. For a court to exercise specific jurisdiction over a defendant, a plaintiff must plead and prove the defendant: (1) purposefully directed activities at or consummated some transaction with the forum, or performed some act by which it purposefully availed itself to the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the plaintiff's claim is one which arises out of or

---

[3] Nor can the business operations of the non-party Spectrum Entities be imputed to Charter or Spectrum Management in determining whether they are "at home" in California: "[T]he existence of a parent-subsidiary or mere sister-sister entity relationship is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Stewart v. Screen Gems–EMI Music, Inc*., 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015); *see also Harris*, 328 F.3d at 1134 ("[A] subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent[.]"). Even if the operations of the Spectrum Entities could be imputed to Defendants (they cannot), Plaintiffs still could not demonstrate that either entity is "at home" in California under *Goodyear* and *Daimler* because, as discussed above, the Spectrum Entities conduct just a tiny fraction of their nationwide business in California. *See* Flores Decl. ¶¶ 9-15; *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1559 (2017) (operation of "over 2,000 miles of railroad track and more than 2,000 employees" in the forum state did not subject defendant to general jurisdiction).

relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice (*i.e.*, it is reasonable). *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

The defendant's contacts with the forum state must be what "give rise to the liabilities sued on" and those contacts must be "continuous and systematic." *Daimler*, 134 S. Ct. at 761. Due process also requires that a defendant be sued in a forum state "based on **his own affiliation with the State,** not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (emphasis added). Thus, the contacts relevant to specific jurisdiction are those contacts with the forum state that are both **related to the lawsuit** and **created by Defendants**. *Walden*, 134 S. Ct. at 1121-22 (emphasis added). As explained below, Plaintiffs do not adequately allege, and cannot establish, that Defendants directed *any* conduct to them in California, much less conduct sufficient to vest this Court with personal jurisdiction over them.

### 1. Plaintiffs Fail to Allege a *Prima Facie* Case of Specific Jurisdiction.

Plaintiffs fail to allege facts stating a *prima facie* case that this Court may exercise personal jurisdiction over Defendants. The FAC should be dismissed in its entirety for this reason alone.

TCPA and CIPA claims, the only two claims in the FAC, permit liability only if Defendants made the calls at issue or, under the TCPA, if the calls are attributable to Defendants through a theory of vicarious liability. *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (party may be directly liable for TCPA violation if it made the call or vicariously liable if call made by its agent). "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Id.* The same level of allegations sufficient to "plead liability" under an agency theory are required to plead "personal jurisdiction" on that basis. *See Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *13 (N.D. Cal. Dec. 4, 2017).

CIPA's requirements are even more stringent: Only the person who recorded the call without disclosure or consent is liable; a principal cannot be liable for the agent who did the recording. *Warden v. Kahn*, 99 Cal. App. 3d 805, 815 (1979) (dismissing claims against defendants who were

not alleged to have recorded a phone call in violation of CIPA because none of those defendants were "the person who committed the violation"); *Kimmel v. Goland*, 51 Cal. 3d 202, 213 n.9 (1990) (noting *Kahn*'s holding and that CIPA claim is only available against defendant who recorded call).

Here, the FAC must be dismissed for lack of personal jurisdiction because it is devoid of any factual allegations from which the Court could infer that Defendants made or recorded the calls. Rather, Plaintiffs generally allege that "Defendants and/or its agents," made and recorded the calls, but that allegation is nothing more than an impermissible "catch-all" formulation that fails to assert any well-pleaded fact beyond the speculative level as to Defendants specifically. FAC ¶¶ 47-49, 70, 84. Are Plaintiffs claiming Charter made the calls? Or Spectrum Management? Or an agent of either Charter or Spectrum Management or an agent of a Spectrum Entity? All are possible interpretations, especially considering their allegations that "Charter is directly liable for intentionally recording incoming and outgoing calls," "directly liable for initiating telemarketing calls to Plaintiff Guss," and "[i]n the alternative," that Defendants are "vicariously liable for its agents' violations of the CIPA and the TCPA." *Id.* ¶¶ 47-49, ECF No. 11. Far more detail is required. *See Winters v. Grand Caribbean Cruises, Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at *4 (D. Ariz. Feb. 11, 2021) (*Winters I*) (ambiguous allegations regarding party who made the purported calls insufficient to establish personal jurisdiction); *Pado, Inc. v. SG Trademark Holding Co.*, No. CV 20-01565-CJC (PVCx), 2020 WL 1445720, *5 (C.D. Cal. Mar. 24, 2020) ("Generalized allegations about a group of defendants [are] insufficient to establish personal jurisdiction.").

Without any well-pleaded allegations that Defendants themselves made or recorded the calls, Plaintiff is required to "show[] that [her caller] is subject to this court's jurisdiction, and that [the caller's] actions are attributable to [Defendants] because [the caller] was [Defendants'] agent with respect to the calls that [the caller] allegedly made to plaintiff." *TranzVia*, 2017 WL 5992123 at *10; *see also Kimmel*, 51 Cal. 3d 202, 213 n.9 (only party at issue in CIPA claim is the party that recorded the call); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 131271, at *3 (N.D. Cal. Apr. 8, 2021) (dismissing CIPA claim on personal jurisdiction grounds where plaintiff failed to sufficiently allege recordation or wiretapping). That is because "[i]t is only when the acts of an agent can be imputed to the principal that the court can exercise personal jurisdiction over the principal for those

acts." *TranzVia,* 2017 WL 5992123 at *10; *see also Kahn*, 99 Cal. App. 3d at 815 (no vicarious liability for CIPA claims).  But the FAC fails to plausibly state an agency relationship between Defendants and the unidentified "agents" who allegedly called Plaintiffs or recorded their calls so as to permit imputation of jurisdictional contacts.

### 2. Defendants' Evidence Confirms that Plaintiffs Cannot Establish Specific Personal Jurisdiction Either Directly or Vicariously.

In any event, the indisputable evidence establishes that Defendants are not directly liable for the purported calls and therefore are not subject to personal jurisdiction on that basis, as they did not make the calls at issue.  Defendants' evidence further confirms that the conduct at issue cannot be imputed to them for jurisdictional purposes on any vicarious liability theory.   Thus, separate from Plaintiffs' pleading failures, Defendants' evidence requires dismissal of the FAC in its entirety for lack of personal jurisdiction.

### a.    Direct Liability.

First, Defendants are not subject to specific personal jurisdiction on a theory of direct liability because they did not make the calls at issue.  Thus, on a direct liability theory of personal jurisdiction, Plaintiffs' purported injuries in this matter did not arise from any intentional forum-directed activities by Defendants because no such activities exist.  *See Winters I*, 2021 WL 511217, at *4.  Defendants have absolutely no connection to, or affiliation with, the alleged calls to Guss.  *See* Flores Decl. ¶¶ 16-17; Patnekar Decl., ¶ 7.  Although the Spectrum Entities—not named in the FAC—engage in (legal) telephone marketing through one internal group, that group and its vendors did not receive the Subject Number as a lead, nor make any calls to Guss's Subject Number.  Patnekar Decl. ¶¶ 5-7.  In other words, Defendants never called Guss and their affiliates didn't either.  *Id.*

Similarly, as to Johnson, independent non-party UP Digital, not Defendants, received and returned Johnson's call regarding ordering cable services, which order was rejected by Defendants. Qureshi Decl., ¶¶ 10-13.  As a result, hailing Defendants into this Court does not comport with notions of fair play and substantial justice because Plaintiffs are suing Defendants for the alleged conduct of third parties for which Defendants are not directly (nor vicariously) liable (and in the case of Guss, may have no relationship with whatsoever).  *Winters I*, 2021 WL 511217, at *4 (declaration that

defendants did not make calls at issue sufficient to controvert plaintiff's assertion of personal jurisdiction); *Kimmel*, 51 Cal. 3d 202, 213 n.9 (only party at issue in CIPA claim is the party that recorded the call); *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 800 (9th Cir. 1989) (affirming dismissal for lack of personal jurisdiction where plaintiff's allegations contradicted by defendant's affidavit).

### b.    Apparent Authority.

Second, as to personal jurisdiction via a theory of apparent authority, Defendants did not interact with Plaintiffs before the alleged calls at all—much less did they make statements about a third-party that Plaintiffs have not even identified.  Flores Decl. ¶¶ 16-17; Patnekar Decl. ¶¶ 5-7; Qureshi Decl. ¶¶ 10-13.  Thus, in light of Defendants' jurisdictional evidence, Plaintiffs cannot meet their evidentiary burden to establish apparent authority.  *TranzVia*, 2017 WL 5992123 at *12 ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when that belief is reasonable and is ***traceable to a manifestation of the principal***."); *Winters v. Quicken Loans, Inc.*, No. CV-20-00112-PhX-MTL, 2021 WL 5040323, at *4 (D. Ariz. Oct. 29, 2021) (*Winters II*) (no apparent authority where "there is no indication in the Amended Compliant [sic] that Quicken Loans identified the Telemarketing Agent as a Quicken Loans' agent, commented on the Telemarketing Agent's role or authority, or even mentioned the Telemarketing Agent, or made any manifestations indicating that the Telemarketing Agent was an agent."); *Rogers v. Postmates Inc.*, No. 19-cv-05619, 2020 WL 3869191, *6 (N.D. Cal. July 9, 2020) ("Apparent authority here would need to be established by alleging that Postmates said or did something upon which Rogers relied . . . [t]hus, the principal's manifestations are lacking."). Defendants also cannot be vicariously liable for the alleged recording of the calls in violation of CIPA, and thus cannot be subject to personal jurisdiction on that basis, because only the individual who actually records the call commits a CIPA violation.  *See Kahn*, 99 Cal. App. 3d at 815 (no vicarious liability for CIPA claims); *Kimmel*, 51 Cal. 3d at 213 n.9 (CIPA claim is only available against defendant who recorded call).  And, even if vicarious liability principles applied to Plaintiffs' CIPA claims (they do not), Defendants' jurisdictional evidence establishes Defendants did not interact with Plaintiffs before the alleged calls, much less make statements to Johnson about UP Digital's authority

to record calls without consent or about the unidentified party that purportedly called Guss, further preventing personal jurisdiction on that basis.  Flores Decl., ¶¶ 16-17; Patnekar Decl., ¶¶ 5-7; Qureshi Decl., ¶¶ 10-13.

### c.      Actual Authority.

Third, as to personal jurisdiction through actual authority, Defendants' evidence confirms that it did not give any agent actual authority to place outbound telemarketing calls on its behalf or record calls in violation of the law.  Patnekar Decl., ¶¶ 5-7; Qureshi Decl. ¶¶ 10-13.  As to Plaintiffs' CIPA claim, there is no personal jurisdiction via a theory of vicarious liability because the statute does not provide for the same.  *Kahn*, 99 Cal. App. 3d at 815 (no vicarious liability for CIPA claims); *Kimmel*, 51 Cal. 3d at 213 n.9 (CIPA claim is only available against defendant who recorded call); *Johnson*, 2021 WL 131271, at *3 (dismissing CIPA claim on personal jurisdiction grounds where plaintiff failed to sufficiently allege recordation or wiretapping by defendant).  And even if traditional vicarious liability principles applied (they do not), Defendants' jurisdictional evidence establishes that there was no actual authority for the purported CIPA violation(s) because: (1) as to Johnson, UP Digital was required to comply with all applicable laws in the marketing of any Spectrum cable and internet services, and, in any event, a disclosure occurred on her inbound call and the UP Digital representative immediately identified himself on the follow up call and she did not hang up; and (2) as to Guss, the authorized telemarketing vendors for Defendants are required to comply with all laws in conducting outbound telemarketing, including CIPA.  Patnekar Decl., ¶¶ 5-7; Qureshi Decl. ¶¶ 5-13, Ex. A; *see also Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 118 (2006) ("A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call [does] not violate [CIPA]."); *Maghen v. Quicken Loans Inc*., 680 Fed. App'x 554, 556 ("Maghen also consented to have the second call recorded, because he was informed during the first call that Quicken Loans' calls were recorded, he knew Quicken Loans was the party calling him, and he stayed on the line.")

As to Guss's TCPA claims, the unidentified third-party's purported acts cannot be imputed to Charter based on any actual authority theory of agency because she has not even identified the entity that made the calls, much less that Defendants had a principal-agent relationship with that entity.

*TranzVia*, 2017 WL 5992123, \*10-13 (granting 12(b)(2) motion to dismiss where the complaint did "not allege any facts showing that TranzVia had any control, or any express or actual authority, over [telemarketing representative] or any associated entity that made the phone calls" and noting that a "plaintiff must allege facts, not conclusions, and the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations"); *Rogers*, 2020 WL 3869191, at \*4 ("Absent from the SAC are allegations that Postmates exercised any control over the 'manner and means' in which Bird Dog executed the campaign on its behalf . . . [t]he most substantive allegation concerning the contours of the relationship between Postmates and Bird Dog is the allegation that Postmates contracted with Bird Dog, but [a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency."); *Winters I*, 2021 WL 511217, at \*6 ("This deficiency is not cured by Plaintiffs' assertion that some callers identified themselves as representatives of Grand Caribbean, because this again says nothing about control."); *Winters II*, 2021 WL 5040323, at \*4 (similar).

Indeed, the only parties vested with actual authority to make outbound telemarketing calls on behalf of any Spectrum Entity did not make the alleged calls. Patnekar Decl., ¶¶ 5-7. Nor would they, as Spectrum Telesales and its authorized outbound telemarketing vendors only make marketing calls in compliance with all applicable laws, including the TCPA and CIPA. *Id.* For this reason, even if the tenuous conduct of a Spectrum Entity or its authorized outbound telemarketing vendor could be imputed to Defendants (they cannot), that conduct did not "give rise to the liabilities sued on," as required to confer specific jurisdiction. *Daimler*, 134 S. Ct. at 761.

At most, Guss makes a hearsay allegation that an unidentified individual told her it was offering Spectrum services on the calls, FAC ¶¶ 76-82, but "[i]t is not enough that each representative identified him or herself as acting on behalf of [alleged principal] . . . [s]uch allegations say nothing about whether defendant consented to those representations . . . [a]nd, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives." *Abante*, 2018 WL 288055 at \*5; *Rogers*, 2020 WL 3869191 at \*5 (finding allegations that company sent text messages on behalf of another failed to plausibly allege agency, as opposed to beneficial contractual relationship); *Winters I*, 2021 WL 511217, at \*6 (similar). Guss

includes vague allegations regarding Defendants' independent contractor program, ***but she does not allege that one of these parties was the calling party***, much less identify who the caller was. *Compare* FAC ¶¶ 47-64 (detailing Charter's retail partner program) *with id*. ¶¶ 72-84 (alleging that Defendants or an unidentified "agent" of Defendants made marketing calls). Nor could she establish actual agency in this manner, since those parties are prohibited from marketing by outbound telesales in any event. Patnekar Decl., ¶ 5. These broad allegations unconnected to the calls at issue in this case cannot establish personal jurisdiction over Defendants. *Winters I*, 2021 WL 511217, at *6.

Moreover, as the specific jurisdictional contacts must provide the basis for actual agency for purposes of the TCPA and CIPA claims (assuming CIPA allowed for vicarious liability), Plaintiffs "must do more than establish an agency relationship . . . [they] must also establish that the purported agent had actual authority to place the ***unlawful calls***," *i.e*., to place a telephone call using PRV, in violation of the "do-not-call" rules, or in violation of CIPA. *Jones v. Royal Admisn. Serv*., 887 F.3d 443, 448-89 (9th Cir. 2018); *see also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("Plaintiff has not shown that [principal] can be held liable for TCPA violations because Plaintiff does not allege that [principal] directed agents use an autodialer in any way that violates the TCPA."). Plaintiff's FAC is devoid of any well-pleaded facts sufficient to render any such contention plausible. *See generally* FAC. And, given Defendants' indisputable evidence that neither they nor their affiliates called Guss or authorized calls to her that violate the law (or, in Johnson's case, that non-party UP Digital handled the calls in full compliance with CIPA by playing a disclosure for every inbound call), Plaintiffs cannot allege anything to the contrary in good faith. Patnekar Decl., ¶¶ 5-7; Qureshi Decl., ¶¶ 10-13.

### d.      Ratification.

Finally, Plaintiffs cannot establish personal jurisdiction via ratification. Again, there can be no personal jurisdiction via vicarious liability under CIPA, as discussed above. *Kahn*, 99 Cal. App. 3d at 815; *Kimmel*, 51 Cal. 3d at 213 n.9; *Johnson*, 2021 WL 131271, at *3. And even if vicarious liability via ratification was applicable (it is not), Guss's allegations and Defendants' jurisdictional evidence establish that neither Plaintiff completed an order for Spectrum cable and internet services, precluding vicarious liability on a ratification theory. FAC ¶ 77 ("[Guss] did not sign up for

1  Spectrum's services."); Qureshi Decl., ¶ 13; Restatement (Third) of Agency § 4.01, cmt. D (a principal

2  ratifies the action of an agent if it "knowingly accepts the benefits of the transaction").

3        With respect to Guss's TCPA claims, she cannot establish personal jurisdiction via ratification

4  because an agency relationship between Defendants and the unidentified non-party that allegedly

5  called her is required for ratification, and no such agency relationship exists. *Kristensen v. Credit*

6  *Payment Serv. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018) ("Because [alleged agent] was neither an

7  agent nor a purported agent of the lenders or [principal], [alleged agent's] actions do not qualify as

8  ratifiable acts."); *Abante*, 2018 WL 288055, at *6 (dismissing TCPA claim on vicarious liability

9  grounds, in part, because "[p]laintiff cannot show defendant is liable under a ratification theory

10  because 'the principal-agent relationship is still a requisite, and ratification can have not meaning

11  without it'"). Nor is there any evidence that Defendants somehow knew about the unidentified party's

12  outbound telemarketing calls or that it accepted benefits related to the purported calls at issue here;

13  indeed, all the evidence is to the contrary, as Defendants do not know who made the calls other than

14  that it wasn't anyone authorized by them. Flores Decl. ¶¶ 16-17; Patnekar Decl. ¶¶ 5-7.

15        And, again, Guss concedes that she did not order Spectrum services, meaning Defendants

16  couldn't have realized any benefit from the calls by the unidentified third parties. FAC ¶ 77 ("She

17  did not sign up for Spectrum's services."). This too precludes personal jurisdiction by ratification.

18  *Tuso v. Nat'l Health Agents*, No. 2:20-cv-02130-JAM0CKD, 2021 WL 2534220, at *4 (E.D. Cal.

19  June 21, 2021) (dismissing TCPA claim on vicarious liability grounds, in part, because plaintiff failed

20  to establish defendants received a financial benefit sufficient for ratification).

21        In light of Plaintiffs' allegations and Defendants' evidence, Plaintiffs simply have not and

22  cannot set forth any facts in support of a ratification theory of jurisdiction. *See Kristensen*, 879 F.3d

23  at 1014 (ratification is "the affirmance of a prior act done by another, whereby the act is given effect

24  as if done by an agent acting with actual authority"); *TranzVia*, 2017 WL 5992123 at *13 (ratification

25  requires "facts sufficient to allow the court to reasonably infer that [Defendants] knew that [a caller]

26  violated the TCPA and that it knowingly accepted the benefits of [the caller's] violation"). 

27  Accordingly, Plaintiffs' TCPA and CIPA claims must be dismissed.

28

**D.** **The Northern District of Illinois Dismissed a Similar TCPA Claim for Lack of Personal Jurisdiction, Despite the Plaintiff's Greater Factual Support and the More Limited Showing Required in the Seventh Circuit.**

Notably, the Northern District of Illinois granted Charter's motion to dismiss a plaintiff's TCPA claim for lack of personal jurisdiction, without allowing the plaintiff leave to conduct jurisdictional discovery, despite that plaintiff's greater factual showing, including identification of the party that made the calls, and despite the Seventh Circuit's more lenient requirement for establishing personal jurisdiction via vicarious liability. *See Moore*, 523 F. Supp. 3d at 1049. Here, the weakness of Plaintiffs' allegations, including their failure to identify any of the purported calling or recording parties, and the Ninth Circuit's stringent vicarious liability standard compels that the same result obtain.

In *Moore*, the plaintiff alleged that a Charter independent contractor—ExpInfo, Inc.—made telemarketing calls to his telephone, even though that number was listed on that National Do-Not-Call Registry. *Id.* at 1049. Unlike here, where Plaintiffs merely group Defendants and unnamed third-parties together and generally allege they made the calls, the plaintiff in *Moore* ***specifically*** alleged that Charter was vicariously liable under the TCPA because ***ExpInfo*** made the calls on its behalf. *Id.* He included allegations that Charter contracts with independent contractors to market Spectrum-branded services, advertises these contractor opportunities, and (falsely) claimed that Charter allows these independent contractors to place outbound telemarketing calls. *Id.* He also alleged that Charter provided various materials to ExpInfo to market Charter's services, Charter's employees regularly monitored the performance of the contractors, including ExpInfo, to ensure compliance with Charter's rules, Charter had the right to give instructions or directions to its independent contractors, and could terminate the parties' relationship by revoking the contractors' authority. *Id.* As in the current case, Charter introduced declarations showing that it never placed the phone calls in question, nor did it instruct ExpInfo to do the same. *Id.* at 1050.

The court found these allegations—which again are *far more substantial* than those made here—to be insufficient to establish personal jurisdiction over Charter, especially in light of Charter's evidence. As to actual authority, the court determined that plaintiff's allegations regarding Charter's

control over ExpInfo were insufficient, as the evidence established that Charter required ExpInfo to comply with all laws and prevented ExpInfo from making outbound telemarketing calls in any event. *Id*. at 1053.  Plaintiff's apparent authority theory failed because he did not establish how he reasonably relied to his detriment on any purported apparent authority that Charter vested ExpInfo, as he admittedly did not purchase Charter's cable and internet services.  *Id*. at 1053-54.  Likewise, plaintiff could not establish personal jurisdiction via ratification because he could not establish that Charter knowingly accepted any benefit from the alleged calls.  *Id*.  Accordingly, the court dismissed plaintiff's claims for lack of personal jurisdiction.  *Id*.

The lack of personal jurisdiction is even more stark here than it was in *Moore*, especially considering that the Ninth Circuit has the most stringent vicarious liability standard in the country, much more so than the Seventh Circuit.  Just as in *Moore*, Plaintiff Johnson's CIPA claim, assuming vicarious liability is available (it is not), involves non-party UP Digital, a non-exclusive, independent contractor whose contacts with Johnson cannot be attributed to Defendants, as explained above.  As to Plaintiff Guss, the lack of personal jurisdiction is even more egregious because she cannot even specifically allege who called her.  *See generally* FAC.  If Guss's allegations were sufficient to confer personal jurisdiction over Defendants, Defendants would be subject to personal jurisdiction in any forum any time any person made a call advertising Spectrum services, regardless of whether that party was actually affiliated with Defendants.  That is not the law.  Accordingly, the Court should dismiss Plaintiffs' claims for lack of personal jurisdiction, just as in *Moore*.

## IV.     CONCLUSION

For these reasons, the Court should dismiss the amended complaint in its entirety for lack of personal jurisdiction.


DATED:  November 19, 2021                         KABAT CHAPMAN & OZMER LLP


                                                  By:   /s/ *Kristapor Vartanian*
                                                        Kristapor Vartanian
                                                        *Attorney for Defendants*

1

**<u>PROOF OF SERVICE</u>**

2

**U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

3

4

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Ave., Suite 2225, Los Angeles, CA 90071.

5

6

On November 19, 2021, I served the foregoing document(s) described **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

7

8

9

☐      **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, CA.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

10

11

12

☒      **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

13

14

☒      (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

15

16

Executed on November 19, 2021, at Los Angeles, California.

17

18

/s/ Windy Thor_____
Windy Thor

19

20

21

22

23

24

25

26

27

28

1

**SERVICE LIST**

2   Yitzchak H. Lieberman
    Grace E. Parasmo
3   PARAMO LIEBERMAN LAW
    7400 Hollywood Blvd., Suite 505
4   Los Angeles, GA 90046
5   Tel: (917) 657-6857
    Fax (917) 501-3346
6   Email: ylieberman@parasmoliebermanlaw.com
              gparasmo@parasmobliebermanlaw.com
7
    David C. Parisi
8   Suzanne Havens Beckman
9   PARISI & HAVENS LLP
    100 Pine Street, Suite 1250
10  San Francisco, CA 94111
    Tel: (818) 990-1299
11  Fax: (818) 501-7852
    Email: dcparisi@parisihavens.com
12            shavens@parisihavens.com
13
    *Attorneys for Plaintiffs*
14  *Loretta Johnson and Charlotte Guss*
15
16
17
18
19
20
21
22
23
24
25
26
27
28