UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA JOHNSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC, et al., <br><br> Defendants. | Case No. 21-cv-06135-HSG <br><br> **ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. Nos. 35, 36 |

Before the Court is Defendants Spectrum Management Holding Company, LLC and Charter Communications, Inc.'s motion to compel arbitration.[1] Dkt. No. 35. For the following reasons, the Court GRANTS the motion.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Loretta Johnson alleges that when she called Spectrum in July 2020 to sign up for its cable and internet service, her phone calls were recorded without her consent in violation of the California Invasion of Privacy Act ("CIPA"). Dkt. No. 1-1 ("Compl.") ¶¶ 3, 5, 31-37. In July 2021, Johnson brought this putative class action lawsuit in Alameda County Superior Court asserting a CIPA claim against Spectrum and its parent company Charter Communications, Inc. (collectively, "Spectrum"). *Id.* ¶¶ 56-62. Two months later, Spectrum removed the case to this Court. Dkt. No. 1. Spectrum now moves to compel arbitration, and the motion is fully briefed.[2] Dkt. Nos. 35 ("Mot."), 40 ("Opp."), 44 ("Reply").

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).
[2] Spectrum moves, in the alternative, to dismiss Johnson's claims for lack of personal jurisdiction. Dkt. No. 36.

### B. The Agreement

Aside from Johnson's attempt to sign up for Spectrum's services by phone as described above, Johnson separately signed up for Spectrum's services through its website. In doing so, Johnson agreed to Spectrum's Residential General Terms and Conditions of Service (the "Agreement"). The first page of the Agreement contains the following unnumbered paragraph:

> THESE GENERAL TERMS CONTAIN (1) **A BINDING ARBITRATION PROVISION, WHICH INCLUDES A WAIVER OF YOUR RIGHT TO BRING CLAIMS AS CLASS ACTIONS**; (2) A LIMITATION ON YOUR RIGHT TO BRING CLAIMS AGAINST SPECTRUM MORE THAN 1 YEAR AFTER THE RELEVANT EVENTS OCCURRED; AND (3) THE RIGHT TO OPT OUT OF THE FOREGOING PROVISIONS. THESE PROVISIONS AFFECT SUBSCRIBER'S RIGHTS UNDER THESE GENERAL TERMS WITH RESPECT TO ALL SERVICES. SEE SECTION 29 FOR DETAILS ON THESE PROVISIONS.

Dkt. No. 31-5 at 8 (Ex. A at 2) (emphasis added). In addition, the Agreement contains an arbitration section, reproduced below in relevant part:

> 29. ARBITRATION. The following provisions are important with respect to the agreement between Subscriber and Spectrum regarding Spectrum's Services memorialized by these General Terms.
>
> PLEASE READ THEM CAREFULLY TO ENSURE THAT SUBSCRIBER UNDERSTANDS EACH PROVISION. **These General Terms require the use of arbitration to resolve disputes and otherwise limits the remedies available to Subscriber in the event of a dispute.**
>
> Subject to the "Exclusions" paragraph below, **Spectrum and Subscriber agree to arbitrate disputes and claims arising out of or relating to these General Terms, the Services, the Equipment, or marketing of the Services Subscriber has received from Spectrum.** Notwithstanding the foregoing, either party may bring an individual action on any matter or subject in small claims court.
>
> . . .
>
> A party who intends to seek arbitration must first send to the other a written notice of intent to arbitrate, entitled "Notice of Intent to Arbitrate" ("Notice"). The Notice to Spectrum should be addressed to: VP and Associate General Counsel, Litigation, Charter Communications, 12405 Powerscourt Drive, St. Louis, MO63131 ("Arbitration Notice Address"). The Notice must: (1) describe the nature and basis of the claim or dispute; and (ii) set forth the specific relief sought. **If we do not reach an agreement to resolve the claim within 30 days after the Notice is received, Subscriber or Spectrum may commence an arbitration proceeding, in which all issues are for the arbitrator to decide (including the scope of the arbitration clause), but the arbitrator shall be bound by the terms**

> **of these General Terms.**
>
> The arbitration shall be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these General Terms, and the arbitration shall be administered by the AAA.
>
> . . .
>
> Severability. If any clause within these arbitration provisions is found to be illegal or unenforceable, that specific clause will be severed from these arbitration provisions, and the remainder of the arbitration provisions will be given full force and effect.
>
> NOTWITHSTANDING ANYTHING TO THE CONTRARY, IN THE EVENT SOME OR ALL OF THESE ARBITRATION PROVISIONS IS DETERMINED TO BE UNENFORCEABLE FOR ANY REASON, OR **IF A CLAIM IS BROUGHT THAT IS FOUND BY A COURT TO BE EXCLUDED FROM THE SCOPE OF THESE ARBITRATION PROVISIONS, BOTH PARTIES AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY**.
>
> For purposes of the foregoing sentence only, in the event such waiver is found to be unenforceable, it shall be severed from these General Terms, rendered null and void and of no further effect without affecting the rest of the arbitration provisions set forth herein.

*Id.* at 12-13 (Ex. A at 6-7) (emphases added).

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When considering a motion to compel arbitration, the Court is limited to determining (1)

3

whether a valid arbitration agreement exists, and if so, (2) whether the arbitration agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the Court must compel arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration.").

"Courts refer the question of arbitrability to the arbitrator only if [the parties] leave no doubt that such was their intent." *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1239 (9th Cir. 1988) (quoting *Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510 (9th Cir. 1987) ) (internal quotation marks omitted). "[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). When the parties have agreed to arbitrate questions of arbitrability, procedural questions, such as whether a contractual grievance procedure has been followed, or the effect of waiver or delay, are presumptively also reserved exclusively for arbitration. *Howsam*, 537 U.S. at 84. "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

### III. DISCUSSION

Spectrum seeks to compel arbitration on the ground that the parties' Agreement delegated arbitrability issues to the arbitrator. Mot. at 18-19. Spectrum also asserts that if the Court decides it must determine the gateway issues of arbitrability, the Court should find the parties' Agreement to be valid and enforceable, and to cover Johnson's claims. *See id.* at 20-22. Because Spectrum's argument regarding the delegation of gateway issues to the arbitrator is a threshold issue, the Court begins there.

Pointing to the Agreement's arbitration provision language stating that "all issues are for the arbitrator to decide (including the scope of the arbitration clause)," Dkt. No. 35-1 at 12, Spectrum argues that the parties "clearly and unmistakably" delegated arbitrability issues to the arbitrator. Mot. at 18-19. The Court agrees. The language clearly indicates that the arbitrability determination is committed to the arbitrator. Johnson argues that this section should be read to cabin the arbitrator's determination of arbitrability only to claims brought in arbitration, not to those initially brought in court. But the Agreement's plain text does not support that interpretation, which would effectively negate the arbitration clause. The language delegating arbitrability to the arbitrator is part of a larger section laying out the process by which the parties initiate arbitration. The Agreement includes this arbitrability language here – and not elsewhere – because questions of arbitrability are to be determined by the arbitrator in arbitration, not by a court. Crediting Johnson's contrary argument would mean that any party to the Agreement could simply evade arbitration by preemptively filing a lawsuit, then asking the court to determine arbitrability. That outcome is inconsistent with the overall context of the Agreement, which fundamentally "require[s] the use of arbitration to resolve disputes." Dkt. No. 31-5 at 12 (Ex. A at 6). Accordingly, the Court concludes that the Agreement "clearly and unmistakably" delegates the question of arbitrability to the arbitrator.

Johnson also challenges the "clear and unmistakable" delegation by claiming that other language in the Agreement conflicts with this provision. Specifically, Johnson points to Agreement language that ". . . *IF A CLAIM IS BROUGHT THAT IS FOUND BY A COURT TO BE EXCLUDED FROM THE SCOPE OF THESE ARBITRATION PROVISIONS*, BOTH PARTIES AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY." Dkt. No. 35-1 at 12 (emphasis added). Thus, Johnson contends, the Agreement limits the arbitrator's authority to determine the arbitrability of claims to those brought in arbitration, not those brought before a court. However, this provision does not create any ambiguity as to that delegation. The language Johnson refers to is a partial quotation from a larger section that reads:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY, IN THE EVENT SOME OR ALL OF THESE ARBITRATION PROVISIONS IS DETERMINED TO BE UNENFORCEABLE FOR

ANY REASON, OR IF A CLAIM IS BROUGHT THAT IS FOUND BY A COURT TO BE EXCLUDED FROM THE SCOPE OF THESE ARBITRATION PROVISIONS, BOTH PARTIES AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY.

Dkt. No. 35-1 at 12. Read as a whole, this sentence contemplates only that should a court find a claim excluded from the Agreement's scope, the parties agree to waive their rights to a jury trial. The clause does not conflict with the Agreement's clear delegation of arbitrability to an arbitrator.

This conclusion squares with the Ninth Circuit's reasoning in *Mohamed v. Uber Techs., Inc.*, which held that an express delegation provision is not rendered ambiguous merely because a different section of the agreement recognizes that the parties may need to invoke the jurisdiction of a court. *Mohamed* dealt with two contracts containing a venue provision granting state or federal courts in San Francisco exclusive jurisdiction over any disputes arising out of or in connection with the contracts. 848 F.3d at 1209. The Ninth Circuit held that any conflict between the unambiguous delegation provision and the venue provision was "artificial" because the venue provision was intended for a set of circumstances lying outside the scope of arbitration. *Id.* ("No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." (citation omitted)). On this basis, the Ninth Circuit held that the delegation provision "clearly and unmistakably delegated the question of arbitrability to the arbitrator" notwithstanding the venue provision. *Id.* Similarly here, "no matter how broad the arbitration clause, the parties may need to invoke the jurisdiction of a court for adjudicating claims that are not covered by their arbitration agreement or to seek other remedies." *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018). In those situations, the parties would raise such claims before a court that could have the ability to conduct either a jury or bench trial, and in that circumstance, both parties would waive their rights to a jury trial. Accordingly, the Agreement's reference to what happens "IF A CLAIM IS BROUGHT THAT IS FOUND BY A COURT TO BE EXCLUDED FROM THE SCOPE OF THESE ARBITRATION PROVISIONS" does not undermine the express delegation

language of the Agreement.[3]

## CONCLUSION

The Court **GRANTS** Spectrum's motion to compel arbitration. The Court **DENIES AS MOOT** Spectrum's motion to dismiss for lack of personal jurisdiction. This action is hereby **STAYED** pending resolution of the arbitration. The parties shall file a joint report regarding the status of the arbitration proceeding 90 days from the date of this order, and every 90 days thereafter until that proceeding is concluded. The parties also are directed to jointly notify the Court within 48 hours of the conclusion of the arbitration proceeding. The clerk is directed to administratively close the case.

This order terminates Docket Nos. 35, 36.

**IT IS SO ORDERED.**

Dated:  6/2/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] Because the Agreement "clearly and unmistakably" delegates the gateway issues to the arbitrator, the Court need not reach the parties' disputes regarding Spectrum's updated Agreement language and the Agreement's incorporation of AAA Rules.